**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MUELLER STREAMLINE CO. | |
| Plaintiff, | |
| v. | CIVIL NO. 13-01779 (JAG) |
| RAFAEL RODRÍGUEZ BARRIL, INC. | |
| Defendant | |

On October 15, 2013, Mueller Streamline Co. ("Mueller") filed a Verified Complaint against Rafael Rodríguez Barril, Inc. ("Defendant" or "RR Barril"). (Docket No. 1)  After several unsuccessful attempts to perform service, this Honorable Court ordered that the Defendant be served by publication. (Docket No. 11)  Thus, on February 11, 2014, Mueller delivered a copy of the Summons, Summons by Publication that was published on February 6, 2014, and the Verified Complaint (with the corresponding exhibits) to defendant RR Barril, by certified mail/return receipt requested in accordance with Rule 4.6 of the Rules of Civil Procedure for the Commonwealth of Puerto Rico, P.R. Laws Ann. Tit. 32, App. V. R. 4.6. (Docket No. 15)

As of today, Defendant has failed to answer the Verified Complaint or otherwise move in response thereto, or file a motion for extension of time to answer the Verified Complaint. Pursuant to Fed.R.Civ.P. 55(b) and Local Civil Rule 55, Mueller requested the Entry of Default and Default Judgment against Defendant on June 11, 2014. (Docket No. 22)  Entry of Default was granted on June 20, 2014 and entered by the Clerk on that same date. (Dockets Nos. 23 and 24)

**Findings of Fact**

The following verified allegations made by Mueller are established as true and uncontested. Mueller is a manufacturer of copper tube and fittings, brass and copper alloy rod, bar and shapes, aluminum and brass forgings, aluminum and copper impact extrusions, plastic fittings, pipe and valves, refrigeration valves and fittings, and fabricated tubular products ("Mueller Products"). (Docket No. 1 at ¶10)  During the 1980's, Mueller and RR Barril entered into a course of dealings whereby RR Barril became a distributor and sales agent of Mueller Products in Puerto Rico. (Declaration under Penalty of Perjury Under 28 U.S.C. 1746 ("Declaration of Colin Schafer"), Docket No. 1-1 at ¶2)  There are no written contracts between the parties governing the business relationships between Mueller and RR Barril. (Docket No. 1-1 at ¶4)

On March 19, 2013, RR Barril placed an order for Mueller Products for which it was invoiced in the total amount of $91,935.36 (the "March Invoice"). (Declaration of Collin Schafer, Docket No. 1-1 at ¶6)  The products ordered by RR Barril through this Order arrived in Puerto Rico on or about April 2, 2013. (Declaration of Collin Schafer, Docket No. 1-1 at ¶8)  On or about April 12, 2013, RR Barril, through its representative Mr. Rafael Rodríguez ("Mr. Rodríguez"), sold these products to Serafin Wholesale Distributors, Inc. ("Serafin"). (Declaration of Collin Schafer, Docket No. 1-1 at ¶11; *see also* Docket No. 1-D.)  Mr. Rodríguez has been the contact person and person in charge of RR Barril's business since about 2010.

RR Barril sold the parts to Serafin for $87,786.59, or about a 5% discount of the price that RR Barril agreed to pay Mueller for the same parts in its March Order. (Declaration of Collin Schafer, Docket No. 1-1 at ¶10-11; *see also* Docket No. 1- E)  Serafin is one of Mueller's biggest clients in Puerto Rico. (Declaration of Collin Schafer, Docket No. 1-1 at ¶12)  The

2

March Invoice became due and payable on May 24, 2013, and notwithstanding the fact that RR Barril had received payment from Serafin, RR Barril failed to pay Mueller the amount owed under the March Invoice. (Declaration of Collin Schafer, Docket No. 1-1 at ¶13)  Since then, Mueller has repeatedly tried to contact Mr. Rodríguez in order to collect and request payment for the amount owed. (Declaration of Collin Schafer, Docket No. 1-1 at ¶14)

Mueller continued its efforts to collect from RR Barril over several months to no avail. The Verified Complaint further established that, in late 2013, without giving any advance notice to Mueller, RR Barril shut-down operations in Puerto Rico, abandoning the commercial relationship with Mueller, and relinquishing its obligations as a distributor and sales agent of Mueller Products in Puerto Rico.  As a result, the market for Mueller Products in Puerto Rico remains unattended and Mueller has been unable to collect on the last order delivered to RR Barril in the amount of $91,935.36. (Docket No. 1 at ¶32-34)  Some of the clients that used to purchase Mueller Products in Puerto Rico are now purchasing products from Mueller's competitors; thereby, losing market share. (Docket No. 1 at ¶30)

RR Barril abandoned its relationship with Mueller and is not properly equipped to service Mueller's customers in Puerto Rico nor does it have the inventory necessary to maintain and develop the market in Puerto Rico. (Declaration of Collin Schafer, Docket No. 1-1 at ¶23) Consequently, on October 10, 2013, Mueller terminated RR Barril. *See* copy of letter attached to the Verified Complaint (Docket No. 1-B).

Mueller requests that a Default Judgment and Order be entered providing and holding that: (1) Mueller shall recover from Defendant the sum certain established through the Verified Complaint in the amount of $91,935.36, plus interest pursuant to 28 U.S.C. §1961; (2) the Puerto Rico Sales Representatives Act, Law 21 of 1990 ("Law 21"), which regulates Service

Representatives, P.R. Laws Ann. tit. 10, § 279 *et seq*., does not apply to the business relationship held by parties; (3) Mueller had "just cause" under the Puerto Rico Dealers Act, Law 75 of 1964 ("Law 75"), P.R. Laws Ann. tit. 10, § 278 *et seq.,* to terminate the distributorship with RR Barril; and (4) RR Barril must deliver to Mueller any records in its possession relating to the business relationship with Mueller or Mueller Products which include, but are not limited to, sales and pricing data, reports, catalogs, promotional materials or other documents pertaining to Mueller Products, including all copies and reproductions thereof, as well as all other proprietary materials related to Mueller and/or any information that may contain commercial secrets that could adversely affect Mueller's business and its negotiations and competitive position in the market.

For the reasons discussed herein, such requests are hereby granted.

## CONCLUSIONS OF LAW

### I.   RR Barril is in Default

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default. Fed.R.Civ.P. 55(a). Pursuant to Fed.R.Civ.P.12 (a)(1)(A)(i), the time to answer the complaint or otherwise move in response to the Verified Complaint expired on February 27, 2014. Almost four (4) months after the summon was published, however, the Defendant, RR Barril, has failed to answer the Verified Complaint or otherwise move in response thereto, or file a motion for extension of time to answer the Verified Complaint. Thus, RR Barril is in default.

After an Entry of Default, a Court may examine a plaintiff's complaint to determine whether it sufficiently alleges a cause of action. In making that determination it must assume that all well pleaded factual allegations are true. *See Quirondongo Pacheco v. Rolon Morales*, 953 F.2d. 15, 16 (1st. Cir. 1992). When the Court determines that a defendant is in default, the

4

factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.  It may not be necessary to present testimony to obtain a judgment on a liability issue, although liability is not deemed established simply as a result of the Entry of Default and the Court, in its discretion, may require some proof of the facts that must be established in order to determine liability. *See* 10A Fed. Prac. & Proc. Civ. § 2688 (3d ed.).  Yet, a Default Judgment may be entered without a hearing under Fed.R.Civ.P. 55(a) if a Court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object.  *See Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 339 (1st. Cir. 2008) (citing *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st. Cir. 2002)).

As stated above, it has been almost four (4) months since the summons was published; however, RR Barril has yet to file a responsive pleading in this case.  The Verified Complaint included sufficient facts to establish a valid cause of action and the information contained therein clearly established that RR Barril has abandoned its operations and has failed to perform its duties as distributor and sales agent of Mueller products in Puerto Rico.  Therefore, this Court finds in its discretion that it has a specific, cognizable claim for relief which requires no further evidence or examination.

**II.      Law 21 is not Applicable because the Sales Agency at Issue Predates December 1990 and, thus, Mueller's Termination of Its Business Relationship with RR Barril Does not Entail Liability under that Statute.**

It is well settled that Law 21, P.R. Laws Ann. tit. 10, § 279, cannot be retroactively applied to a commercial relationship between a sales representative and a principal, where the parties entered into a sales representation agreement before the enactment of Law 21. *See Tavarez v. Champion Prods.*, 903 F. Supp. 268 (D.P.R. 1995); *see also Warner Lambert v.*

*Superior Court*, 101 D.P.R. 378, 1 Official Translations 527, 561 (1973) (holding unconstitutional the retroactive application of Law 75 to contracts existing at the time of the law's enactment).   Law 21 is modeled after Law 75 and it is well settled that applicable jurisprudence to Law 75 is also of application in controversies as per Law 21. *See Innovation Mktg. v. Tuffcare Inc.*, 31 F. Supp. 2d 218, 220 (D.P.R. 1998).   Indeed, Law 21 was enacted precisely because the legislature found that the sales representative did not have any legal protection when the statute was passed. *See Cruz Marcano v. Sánchez Tarazona*, 172 D.P.R. 526 (2007).

Therefore, RR Barril is not protected by the provisions of Law 21 because the sales agency at issue here predates December 1990 and, thus, Mueller's termination of RR Barril's agency does not entail liability under that statute.  Furthermore, even if RR Barril were protected by Law 21, Mueller had "just cause" under Law 21 to terminate its sales agency with RR Barril based on all the undisputed facts shown in the Verified Complaint, the Declaration and the documents attached thereto. Pursuant to Law 21, "notwithstanding the existence of a clause in a sales representation contract that reserves the unilateral right of the parties of terminating the existing relationship, no principal or grantor may terminate said relationship, or directly or indirectly perform any act that may impair the established relationship, or refuse to renew said contract upon its regular termination, except for just cause". P.R. Laws Ann. Tit. 10, § 279(a).

Pursuant to Law 21, just cause is defined as "noncompliance of any of the essential obligations of the sales representation contract by the sales representative, or any act or omission on his/her part that may adversely and substantially affect the interests of the principal or grantor in the development of the market or the sale of merchandise or services." P.R. Laws Ann. Tit. 10, § 279(d). Nevertheless, a determination of just cause will depend on the facts of each case.

*See González v. Hurley International, LLC,* 920F.Supp.2d 242 (D.P.R. 2013) (citing *R.W. Int'l Corp. v. Welch Foods,* 88 F.3d 49, 52 (1st. Cir.1996)).

As evidenced by the unopposed allegations in the Verified Complaint, supported by the Declaration of Collin Schafer and the documents attached thereto, it is clear that RR Barril abandoned its relationship with Mueller and has failed to service Mueller's customers in Puerto Rico. RR Barril also failed to pay $91,935.36 as part of the March Invoice which, as of the filing of the Verified Complaint, was over 120 days past due. In sum, RR Barril's actions, and its omissions, constitute just cause under Law 21 for Mueller to terminate the relationship with RR Barril.

### III.    <u>Mueller Had Just Cause under Law 75 to Terminate RR Barril</u>.

Under Law 75, "just cause" is defined as the nonperformance of any of the essential obligations of the distribution agreement, on the part of the dealer, or any action or omission on his/her part that adversely and substantially affects the interest of the principal or grantor in promoting the marketing or distribution or sales of the merchandise or service. *See* 10 P.R. Laws Ann. § 278(d). Essentially, Law 75 is intended to protect all of those who expand a market for the principal's products in Puerto Rico by promoting and closing sales contracts. The relationship between a principal and its distributors should be characterized by cooperation, stability and mutual trust. *See Roberco Inc. v. Oxford Industries, Inc.*, 122 D.P.R. 115 (1988); *see also San Juan Mercantile Corp. v. Canadian Transport Co. Ltd.*, 108 D.P.R. 211 (1978).

Law 75 can therefore be described as a mandatory legislative scheme that regulates the contractual relations of those involved in the business of distributing goods in Puerto Rico. Accordingly, Law 75 provides that "no principal or grantor may directly or indirectly perform    any    act    detrimental    to    the    established    relationship    [...]    except

7

for just cause." P.R. Laws Ann. Tit. 10, § 278a; *see also Casco Sales Company, Inc. v. Maruyama U.S., Inc.*, 901 F.Supp.2d. 311 (D.P.R. 2012).

As evidenced by the unopposed allegations in the Verified Complaint, supported by the Declaration of Collin Schafer and the documents attached thereto, Mueller had "just cause" under Law 75 to terminate the distributorship with RR Barril due to its abandonment of its dealer obligations (Declaration of Collin Schafer, Docket No. 1-1 at ¶23); and its failure to pay for the March Invoice (Declaration of Collin Schafer, Docket No. 1-1 at ¶20.) [1]   The latter has been established by case law as one of the most essential obligations in a principal-dealer relationship. *See Tatan Management v. Jacfran Corp.*, 270 F.Supp.2d 197 (D.P.R. 2003) ("Even without this contractual language, legal, policy, and common-sense considerations dictate that payment for the licensed merchandise - whether to the franchisor or to an approved supplier - constitutes an essential obligation under a franchise agreement such as the one before the Court.")  Further, "[t]he First Circuit has repeatedly held that 'paying for goods on time normally is one of the essential obligations of the dealer's contract, the non-fulfillment of which can constitute just cause under Law 75'." *CASCO Sales Company, Inc. v. Maruyama U.S., Inc.*, 2012 U.S. Dist. LEXIS 15796 (citing *Waterproofing Sys. v. Hydro-Stop*, Inc., 440 F.3d 24, 29 (1st Cir. 2006) (citation and internal quotation marks omitted).

In sum, RR Barril's failures, omissions, illegal actions and breach of essential obligations as a distributor adversely and substantially affected Mueller' interests in the sale of the Mueller Products in Puerto Rico.  RR Barril's complete disregard for its obligations to Mueller, including

---

[1] The Court also agrees that plaintiff's other reasons for its decision to terminate RR Barril would sustain a finding of just cause, including RR Barril's failure to purchase Mueller Products since March 2013 (Declaration of Collin Schafer, Docket No. 1-1 at ¶22); RR Barril's failure to promote and advertise Mueller Products in Puerto Rico (Declaration of Collin Schafer, Docket No. 1-1 at ¶23); RR Barril's sharp decline in sales performance (Docket No. 1 at ¶30); and RR Barril's lack of inventory and poor service (Declaration of Collin Schafer, Docket No. 1-1 at ¶21-22).   But, given RR Barril's outright failure to pay for products purchased and its abandonment of the distributorship, the Court need not delve into such matters further.

the conversion of funds obtained from the sale of products to Serafin as to which Mueller was legally entitled to receive in payment of the March Invoice, entails "just cause" under Law 75 to terminate the commercial relationship.

For all the reasons stated above, Mueller had just cause under Law 75 to terminate its commercial relationship with RR Barril on October 10, 2013, without liability under Law 75.

**IV.    Judgment Should be Entered against RR Barril in the Amount of $91,935.36**.

In order for a contract to be valid, three elements must coincide: (1) the consent of the contracting parties, (2) an object subject of the contract and (3) cause for the obligation being contracted by the parties. *See* Art. 1213 of the P.R. Civ.Code, P.R. Laws Ann. tit. 31, § 3391; *Garriga, Hijo, Inc. v. Cond. Marbella,* 143 D.P.R. 927, 933 (1997); *see also APA Int'l Film Distrib., Inc. v. Corp. de P.R. para la Difusión Pública,* 394 F.Supp.2d 443, 450 (D.P.R. 2005). It is well settled law that "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." Article 1042 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §2994; *García v. World Wide Entmt. Co.*, 132 D.P.R. 378 (1992).

Any party is at liberty to establish the terms and conditions of a contract as long as they are not contrary to law, morals and public order. *See* Art. 1207 and 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3372 and 3375; *see also Trinidad v. Chade*, 153 D.P.R. 280, 289 (2001); *Arthur Young & Co. v. Vega*, 136 D.P.R. 157 (1988).  A contract will be deemed to exist only when one or more persons consent to bind or obligate him/herself or themselves, with regard to another or others, to give something or to render some service. *See* Art. 1206 P.R. Civil Code, P.R. Laws Ann. Tit. 31, §3371. Therefore, if the terms of the contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be

observed. *See S.L.G. Francis Acevedo v. SIMED*, 176 D.P.R. 372 (2009); *Echandi Otero v. Stewart Title*, 174 D.P.R. 355, 371 (2008).

As shown by the facts in the Verified Complaint, on March 19, 2013, RR Barril placed an order for Mueller Products. Thereafter, on March 25, 2013, Mueller invoiced RR Barril the total amount of $91,935.36. The parts ordered by RR Barril arrived in Puerto Rico on or about April 2, 2013, and RR Barril sold the parts to Serafin for $87,786.59, or about a 5% discount of the price that RR Barril agreed to pay Mueller. The March Invoice became due and payable on May 24, 2013, and notwithstanding the fact that RR Barril had received payment from Serafin, RR Barril has not made payment to Mueller.

Notwithstanding Mueller's repeated attempts at collecting on the March Invoice, RR Barril has failed to pay the amount of $91,935.36 owed to Mueller. Therefore, Mueller is entitled to collect from RR Barril under the March Invoice the amount of $91,935.36, plus interest calculated pursuant to 28 U.S.C. §1961 from the date of the entry of judgment until the date of payment.

It is an undeniable fact that RR Barril breached its obligations with Mueller. Based on the foregoing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

(1) That Law 21 is not applicable to the sales representative relationship between Mueller and RR Barril and therefore, Mueller is not liable under Law 21;

(2) That Mueller had just cause under Law 75 to terminate its business relationship with RR Barril without incurring any liability under that statute;

(3) RR Barril shall immediately discontinue using any and all Mueller trademarks, trade names, corporate logos and identities, display equipment and marketing materials, and cease and desist from representing, advertising or promoting itself as a Mueller sales representative or

distributor, and conducting or attempting to conduct business as such;

(4) RR Barril shall deliver to Mueller within thirty (30) days from receipt of this Judgment and Order any records in its possession pertaining to Mueller Products; and

(5) RR Barril shall pay Mueller the amount of $91,935.36, plus interest calculated pursuant to 28 U.S.C. §1961 from the date of the entry of judgment until the date of payment.

**SO ORDERED.**

In San Juan, Puerto Rico,  this 27th day of June, 2014.

s/ Jay A. Garcia-Gregory
_____
Jay A. Garcia - Gregory
United States District Judge

11